IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

## JOHN CARROLL COOK v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-08-245     Roy B. Morgan, Jr., Judge**

_____

**No. W2008-02588-CCA-R3-PC  -  Filed February 18, 2010**
_____

The Petitioner, John Carroll Cook, pled guilty in the Madison County Circuit Court to rape of a child and aggravated sexual battery.  He received a total effective sentence of twenty-five years to be served at one hundred percent.  Subsequently, the Petitioner filed for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered.  The post-conviction court denied relief, and the Petitioner appeals.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, John Carroll Cook.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens and Alfred Lynn Earls, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

At the post-conviction hearing, the Petitioner acknowledged that he told the trial court at the guilty plea hearing that he was satisfied with counsel, that he understood the charges he was facing, and that his pleas were knowing and voluntary.  The Petitioner said he had not intended to mislead the court, but, until he did research in prison, he did not understand what was happening.  He said that as a result of his confusion, he pled guilty to an offense he did not commit.

The Petitioner complained that trial counsel did not properly investigate his case and find exculpatory evidence. The Petitioner did not specifically allege what evidence counsel failed to discover. The Petitioner complained that counsel visited with him only three times and that each visit lasted only fifteen or twenty minutes. The Petitioner said that trial counsel did not review discovery materials with him and did not have any substantive conversations with him regarding his defense. The Petitioner maintained that trial counsel spoke with him only about pleading guilty; thus, the Petitioner felt "[a] little" pressured to enter guilty pleas.

The Petitioner stated that he told counsel to investigate counselors and doctors who treated him when he was younger, alleging that they would be helpful in his defense. The Petitioner acknowledged that he did not provide counsel with the names of those individuals. The Petitioner did not know what assistance those witnesses could have provided; however, the State and the Petitioner's post-conviction counsel stipulated that the Petitioner was a victim of sexual abuse when he was a child.

The Petitioner said that at the time of his guilty pleas, he did not know how to read and had informed his trial counsel of this inability. The Petitioner said that he learned to read in prison and noticed some factual errors in a statement he gave to police. The Petitioner acknowledged that he signed the statement but maintained that he was unaware of the factual errors at that time because of his inability to read. The Petitioner stated that part of the statement was accurate and that he "might have" told police that the allegations against him were true; however, he refuted the portion of the statement indicating that he admitted raping his two-year-old daughter. The Petitioner maintained the police "must have misunderstood me." The Petitioner stated that he did not know until after he learned to read in prison that the victim had been examined and that the examination revealed evidence consistent with penile penetration.

The Petitioner maintained that he pled guilty to offenses he did not commit. The Petitioner said that at the time of his guilty pleas, he was confused; however, he admitted that "[n]ot much [about the guilty plea proceedings was confusing] if you think about it." The Petitioner acknowledged that if he were convicted at trial, he could have faced a longer sentence. Thus, he conceded that the effective twenty-five-year sentence he received was "a pretty good thing."

The Petitioner's trial counsel testified that she had handled hundreds of criminal cases, including other child rape cases. She recalled that she was appointed to represent the Petitioner in August 2007. Counsel said she obtained a complete copy of the State's file and shared a copy of the discovery materials with the Petitioner. Trial counsel said that her conversations with the Petitioner led her to suspect his ability to read was limited; therefore, counsel thoroughly discussed the discovery materials with the Petitioner. Counsel

specifically stated that she reviewed the medical reports with the Petitioner and that she reviewed the Petitioner's statement with him "line by line."

Counsel stated that she informed the Petitioner of the charges he was facing and of the potential sentences he could receive for each offense if he were convicted at trial. Additionally, counsel informed the Petitioner that he could receive consecutive sentencing.

Counsel maintained that she was unable to develop any evidence that would help establish the Petitioner's innocence of the crimes and that she acknowledged the Petitioner's chance of success at trial was "slim to none." Counsel stated that she nevertheless wanted to take the Petitioner's case to trial. Counsel hoped that based on sexual abuse he received as a child "a better deal could have been worked out." Counsel said the Petitioner admitted that he was guilty of raping his daughter and that he was remorseful and needed to pay for what he had done. The Petitioner told counsel he did not want a trial and insisted on pleading guilty. Counsel said she reviewed the guilty plea forms with the Petitioner prior to the entry of the pleas.

Counsel said she had explored the need for expert testimony at trial. However, she discovered that the records of the sexual abuse the Petitioner suffered as a child and of the treatment he subsequently received were sparse. She also said she had done research regarding studies showing that "when the wife leaves, if there is a female child, the attraction to the wife can be transferred to the child." Counsel recalled that after she informed the State of the Petitioner's abuse as a child, the State offered the minimum sentence of twenty-five years.

At the conclusion of the hearing, the post-conviction court accredited trial counsel's testimony that she met with the Petitioner and explained the proof against him. Additionally, the court observed that the transcript of the guilty plea hearing reflected that the Petitioner was thoroughly informed regarding the plea process and the consequences of entering guilty pleas and that the Petitioner knowingly and voluntarily entered the guilty pleas. The post-conviction court stated that counsel explored the possibility of using expert testimony at trial but that she was unable to find any exculpatory evidence to exonerate the Petitioner. Accordingly, the post-conviction court found that trial counsel was not ineffective. On appeal, the Petitioner contests the post-conviction court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the Petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the

conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

First, the Petitioner contends that his trial counsel was ineffective. A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a Petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the [P]etitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the Petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). In the context of a guilty plea, "the [P]etitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

On appeal, the Petitioner specifically maintains that trial counsel failed to adequately investigate the case, explain the charges and potential sentences to him, solicit expert testimony, or review the discovery materials with him. However, trial counsel's testimony, which was accredited by the post-conviction court, belies the Petitioner's contentions. Trial counsel testified that she informed the Petitioner of the charges and potential sentences he could receive if convicted at trial. Additionally, trial counsel testified that the Petitioner consistently maintained that he was guilty of the offenses. Nevertheless, counsel pursued mitigation in the form of expert testimony regarding the sexual abuse the Petitioner suffered as a child. Accordingly, the post-conviction court found that counsel was not ineffective in her representation of the Petitioner. There is nothing in the record to preponderate against this finding. The Petitioner did not produce any evidence at his post-conviction hearing that trial counsel could have discovered through further investigation. Generally, "[w]hen a [P]etitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the [P]etitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit any additional witnesses might have offered to the Petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Accordingly, the Petitioner has failed to demonstrate prejudice in this regard. Therefore, we conclude that the post-conviction court did not err in finding that trial counsel was not ineffective.

Additionally, the Petitioner asserts that his guilty pleas were not knowingly and voluntarily entered. We note that in determining whether a Petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self incrimination, the right to confront witnesses, and the right to a trial by jury. See Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences. See Boykin, 395 U.S. at 244.

In State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977), our supreme court set out the procedure trial courts should follow when accepting a guilty plea. Prior to accepting the

guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. Id.; see also Tenn. R. Crim. P. 11(c). A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

In determining whether the Petitioner's guilty plea was knowing and voluntary, this court looks to the following factors:

> [T]he relative intelligence of the [Petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The proof at the post-conviction hearing reflects that the Petitioner was facing charges of rape of a child, a Class A felony, and aggravated sexual battery, a Class B felony. The trial court noted that the State had a strong case against the Petitioner and that the Petitioner was facing a significant sentence if convicted at trial. Trial counsel testified that the Petitioner insisted on pleading guilty, stating that he needed to pay for what he had done. The transcript of the guilty plea hearing reflects that the Petitioner informed the trial court that he understood the rights he was forfeiting, the charges he was facing, and the sentences he would receive, and that he wanted to plead guilty. We conclude that there is no evidence to preponderate against the post-conviction court's finding that the Petitioner knowingly and voluntarily pled guilty.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE